## COMMONWEALTH *vs.* JAMES CAMPBELL.

In an indictment for murder, committed during a riot in which the prisoner was engaged, evidence is incompetent to prove other riotous acts by him at a different place and several hours earlier, unless it is first shown that the various acts were all parts of one continuous transaction.

A rioter cannot be held guilty of murder or manslaughter, by reason of the accidental killing of an innocent person by those who are engaged in suppressing the riot.

INDICTMENT for murder, by shooting William Currier on the 14th of July 1863. The trial took place in December 1863, before *Bigelow,* C. J., and *Metcalf, Merrick* and *Hoar,* JJ. *Foster,* A. G., appeared for the Commonwealth, and *J. G. Abbott & B. F. Russell,* for the prisoner.

The homicide was committed near the armory in Cooper Street, in Boston, at about seven o'clock in the evening, during a riot which grew out of the enforcement of a draft of men for the army; and the evidence offered by the government tended to show, that the prisoner was there participating in the riot, with a large number of other persons. The attorney general offered evidence to show riotous acts by him in Charlestown Street, at about one o'clock in the afternoon of the same day. This evidence was objected to, and the court, after consultation, rendered the following decision:

BIGELOW, C. J. The rule is a familiar one in criminal procedure, that a party cannot be proved guilty of one offence by evidence that at a different time and place he was guilty of committing a similar crime. Such evidence has no tendency to

prove the substance of the issue. But this rule is applicable only to cases where the offence charged and that offered to be proved are distinct. It has no legitimate application where the subject matter under investigation is of such a nature that it may consist of several stages or continuous acts, all constituting one transaction. In the case before us, the theory on which the case in behalf of the government proceeds is, that the prisoner was a participator in an unlawful assembly and riot, during the progress of which the alleged homicide was committed, and that he is responsible for the homicidal act, having been engaged in the unlawful and criminal transactions during which it was committed. The material fact, therefore, to be proved is, that there were such an assembly and riot, and that the prisoner took an active part in creating and promoting them. If the acts which the government now offer to prove as having taken place at an earlier part of the day, and several hours before the homicide was committed, were participated in by the prisoner, and were done with the same general purpose and design of resisting the enforcement of the laws and disturbing the public peace as those which were committed in Cooper Street at the time of the homicide, and were so connected together as to form part of one transaction, and to constitute one and the same riot or unlawful assembly, then it is clear that they are admissible, as tending to prove the guilty purpose and intent of the prisoner at a subsequent point of time, when he was present at the alleged riot at the place of the homicide. But to render these facts competent for this purpose we are of opinion that a foundation must first be laid by proof that the acts were so connected together that they may properly be deemed to form part of one and the same transaction.

Thereupon evidence upon this point was produced, and the testimony objected to was admitted.

It appeared that a military force was called out to suppress the riot in Cooper Street, and was stationed in the armory, and that the mob were fired upon by the soldiers, and the soldiers by the mob. After the evidence on both sides was closed, the

attorney general requested, for the convenience of counsel, a decision upon the following prayer for instructions : " That whether Currier was killed by a shot from within or without the armory, all the parties unlawfully engaged in the transactions which resulted in the homicide were at common law guilty, at least of manslaughter."

The court, after argument and an adjournment, rendered the following decision :

BIGELOW, C. J. The instruction asked for by the attorney general, as we understand it, is substantially this : If the defendant was a participator in the riotous assembly, and, during the attack made by it on the armory, a homicide took place, the defendant is in law guilty of manslaughter, although the evidence may fail to show whether the shot which killed the deceased was fired by the rioters with whom the prisoner was acting in concert, or by the soldiers who were within the armory, and engaged in resisting the attack made upon the building by the rioters outside. This seems to us to present a novel question. No authority has been cited which directly supports the position assumed by the attorney general, and so far as we know there is none to be found. This consideration, though by no means decisive, is entitled to some weight, because the law of homicide, in its application to almost every variety and combination of circumstances, especially to the taking of life by persons engaged in a tumult or riot or other unlawful enterprise or design, is perhaps more fully and clearly settled than any other branch of the law. But we are bound to examine the question further, and ascertain, if we can, whether the doctrine in question has any just foundation in the recognized principles of law by which criminal responsibility for the acts of others is regulated and governed.

There can be no doubt of the general rule of law, that a person engaged in the commission of an unlawful act is legally responsible for all the consequences which may naturally or necessarily flow from it, and that, if he combines and confederates with others to accomplish an illegal purpose, he is liable *criminaliter* for the acts of each and all who participate with

him in the execution of the unlawful design. As they all act in concert for a common object, each is the agent of all the others, and the acts done are therefore the acts of each and all. This doctrine, as applied to cases of homicide, is fully stated in 1 Hale P. C. 441, in a quotation from Dalton in these words: "If divers persons come in one company to do any unlawful thing, as to kill, rob or beat a man, or to commit a riot, or to do any other trespass, and one of them in doing thereof kill a man, this shall be adjudged murder in them all that are present of that party abetting him and consenting to the act or ready to aid him, although they did but look on." So in 1 East P. C. 257, it is laid down that "where divers persons resolve generally to resist all opposers in the commission of any breach of the peace, and to execute it with violence, or in such a manner as naturally tends to raise tumults and affrays; as by committing a violent disseisin with great numbers, or going to beat a man, or rob a park, or standing in opposition to the sheriff's posse, they must at their peril abide the event of their actions;" and if in doing any of these or similar acts any person interfering with them is killed, all who took part in the fact or abetted thereto are guilty of murder. These citations, to which many others of a similar tenor might be added, show that the rule of criminal responsibility for the acts of others is subject to the reasonable limitation that the particular act of one of a party for which his associates and confederates are to be held liable must be shown to have been done for the furtherance or in prosecution of the common object and design for which they combined together. Without such limitation, a person might be held responsible for acts which were not the natural or necessary consequences of the enterprise or undertaking in which he was engaged, and which he could not either in fact or in law be deemed to have contemplated or intended. No person can be held guilty of homicide unless the act is either actually or constructively his, and it cannot be his act in either sense unless committed by his own hand or by some one acting in concert with him or in furtherance of a common object or purpose. Certainly that cannot be said to be an act of a party in any

just sense, or on any sound legal principle, which is not only not done by him, or by any one with whom he is associated or connected in a common enterprise, or in attempting to accomplish the same end, but is committed by a person who is his direct and immediate adversary, and who is, at the moment when the alleged criminal act is done, actually engaged in opposing and resisting him and his confederates and abettors in the accomplishment of the unlawful object for which they are united. Suppose, for example, a burglar attempts to break into a dwelling-house, and the owner or occupant, while striving to resist and prevent the unlawful entrance, by misadventure kills his own servant. Can the burglar in such case be deemed guilty of criminal homicide ? Certainly not. The act was not done by him, or with his knowledge or consent; nor was it a necessary or natural consequence of the commission of the offence in which he was engaged. He could not therefore have contemplated or intended it. Another illustration will perhaps be more apposite to the case before us. Suppose, during the progress of the riot in which it is alleged the prisoner was engaged, and while the soldiers and others in possession of the armory were in the act of repelling the attack of the mob in the street, by firing upon it with the cannon which was used on the occasion, that it had burst by reason of some secret defect, and killed several of those who were in its immediate vicinity ; or that a soldier while handling his musket had by accident inflicted a mortal wound on himself ; it would hardly be contended that in either of these cases the whole body of rioters could be held legally responsible for criminal homicide, by reason of the lives that were thus destroyed. And yet there is no real distinction between the cases supposed and that of the prisoner at the bar, if the rule insisted on by the attorney general is a sound one. The taking of human life, under the circumstances supposed, in a certain sense was the result of the unlawful acts of the mob — that is, it would not have occurred but for the riot which furnished the cause and occasion of the use of the musket or cannon.

Indeed, it seems to us that in every aspect the doctrine contended for, if followed to its legitimate and logical conclusion,

would lead to extraordinary consequences. It would render everybody who participated in a transaction, whether acting in concert or in opposition, whether united in a common design or arrayed on opposite sides in a contest or affray in which each contending party was striving to defeat the purposes of the other, if all acted without legal justification, responsible for every criminal act which was done by any person during the progress of the affair in which they were all engaged. Nor, in applying the principle in question to a case like the one before us, can we see any good reason why the soldiers who defended the armory and resisted the mob, if it should turn out that they acted without sufficient legal authority to justify their acts, might not be held guilty of manslaughter for homicides committed by the rioters, if the latter are to be held responsible for deaths caused by the acts of the soldiers. But the rules of law do not give any countenance to such a doctrine. The real distinction is between acts which a man does either actually or constructively, by himself or his agents or confederates, and those which were done by others acting not in concert with him or to effect a common object, but without his knowledge or assent, either express or implied. For the former the law holds him strictly responsible, and for all their necessary and natural consequences, which he is rightfully deemed to have contemplated and intended. For the latter he is not liable, because they are not done by himself or by those with whom he is associated, and no design to commit them or intent to bring about the results which flow from them can be reasonably imputed to him. So the rule of law was manifestly understood by the framers of the clause contained in Rev. Sts. *c.* 129, § 6, reënacted in Gen. Sts. *c.* 164, § 6, which provides that if any officer, magistrate or other person acting in the suppression of an unlawful assembly, tumult or riot is killed or wounded, all persons taking part in such violation of law shall be answerable therefor. This was clearly not intended as a limitation of the liability at common law, but only as declaratory of the rule as it then existed and was understood.

The case of the Philadelphia rioters, cited by the attorney

general from the Appendix to Wharton's Law of Homicide, 477, is obscurely and imperfectly reported. If it can be supported at all as a true exposition of the law, it can only be upon the ground that both parties or sides had a common object in view, namely, a breach of the peace, and that both went out by an agreement or mutual understanding to engage in an affray or riot. If such was the fact, then, as in the case of a duel, although to accomplish the common purpose they took opposite sides, still they might all well have been deemed to have confederated together in an unlawful enterprise, and thus to have become responsible, on the principle already stated, for a criminal act done in pursuance of the common design by any one of their confederates, with whichever side he may have acted in the affray.

It may properly be added that we can see no foundation in any aspect of the case for the distinction suggested by the attorney general as to the degree of homicide of which the defendant would be guilty, in the event that the jury should find that the deceased was killed by a shot fired by the soldiers in the armory, and not by the mob. If the doctrine contended for is correct, there can be no valid reason for holding the defendant guilty of manslaughter only. If he, as one of the riotous conspirators, is liable at all for acts done by the soldiers and others coöperating with them, his guilt must be the same in degree as if a homicide was committed by one of the rioters with whom he was acting in concert. If it was his act at all, then it was committed by him or his confederates while engaged in an unlawful enterprise, and, according to well settled principles, it would be murder, and not manslaughter. But, for the reason already given, it cannot be regarded as an act for which he is in law responsible. If the homicide was the result of a shot fired by the soldiers or other persons in the armory, acting together in defence against the riotous assembly, the defendant cannot be held guilty of either murder or manslaughter. The jury will accordingly be instructed that, unless they are satisfied beyond a reasonable doubt that the deceased was killed by means of a gun or other deadly weapon in the hands of the prisoner, or of

one of the rioters with whom he was associated and acting, he is entitled to an acquittal.

*The jury acquitted the prisoner.*