Easterly, Associate Judge,
concurring in the judgment and joining in Parts I, III, and IV:
At the time Michael Jones was shot and killed, there were people around him shooting guns at each other.[1] Bernard J. Fleming may have been one of the individuals shooting at Mr. Jones and his companions. No witness ever saw and no vid *1185 eotape ever showed Mr, Fleming shooting a gun, and he was never found in possession of a weapon. He was, however, seen with another man up on a second-floor balcony where police found bullet casings and a bullet; he was also seen before the shooting bringing an object — possibly a gun — to the balcony and removing an object when the shooting was over; and he could have hidden two guns later discovered by the police- under a stairwell in the building, one of which might have been used in the shooting. But even if Mr. Fleming possessed a gun and was one of the persons shooting at Mr. Jones and his companions, no evidence connected any shot he might have fired to the shot that killed Mr. Jones. The bullet retrieved from Mr. Jones’ body was so fragmented that it could not provide an evidentiary link to the shooter. Moreover, evidence showed that Mr. Jones was shot in the back of the head, making it possible that he was shot by Mr. Hamlin.
Nonetheless, Mr. Fleming was held accountable for Mr. Jones’ death.[2] He was convicted of second-degree murder while armed based on the “urban gun battle” theory of causation that this court announced in Roy v. United States, 871 A.2d 498 (D.C. 2005), i.e., the proposition that á defendant who exchanges gunfire with another individual “proximate[ly] eause[s]” any death that results, whether or not the defendant fired the fatal shot, id. at 506,1 assume the division is bound by this court’s decision in Roy to uphold Mr. Fleming’s conviction.[3] But I cannot vote to affirm without commenting on the dangerous incoherence of Roy’s “causation” analysis. In truth, it dispenses with causation altogether, and, by thus reducing the government’s burden of proof for murder, captures in its net individuals who can only be proved to have committed far less serious crimes. Roy was wrongly decided. Moreover, I cannot sigh on to the division’s opinion applying Roy, which effectively expands its illogic. I write separately to explain the flaws with Roy’s causation reasoning and to call for en banc review to reject Roy’s urban gun battle theory of guilt for murder.
I. The Causation Problem in Roy
It is a “basic postulate of our criminal law” that we impose liability when “a free agent [is] confronted with a choice bet-tween doing right and doing wrong and choos[es] freely to do wrong.” Carter v. United States, 252 F.2d 608, 616 (D.C. Cir. 1957).[4] We thus rely on principles of causation and complicity to define criminal culpability: we punish people criminally for the harms they themselves have caused[5] or the crimes they have conspired with or helped others to commit.[6] See Sanford H. *1186 Kadish,[7] Complicity, Cause and Blame: A Study in the Interpretation of Doctrine, 73 Cal. L. Rev. 323, 327 (1985) (discussing the “separate bodies of doctrine” that dictate when an individual may be held responsible for a crime: causation, “where results of a person’s action happen in the physical world,” and complicity, “where results take the form of another person’s voluntary action” and the defendant is somehow affiliated with that person); id. at 332-33 (explaining that these doctrines are premised on our foundational conception that humans are individual, volitional actors who choose whether or not to comply with the law). This court, in Roy, however, disregarded our criminal law’s foundational principles of individual culpability and authorized a determination of guilt for murder in the absence of either actual causation or complicity.
In Roy, an innocent bystander was killed by a stray bullet fired either by Mr. Roy or his codefendant Mr. Settles. Roy, 871 A.2d at 501-02. The government prosecuted both men for murder, on the theory, approved by the trial court, that “it did not matter which [man] started the gun battle or which bullet actually killed” the bystander; it was enough that their actions had “turn[ed] city , streets into an urban battle ground.” Id. at 506. The trial court instructed the jury that the only acts the government had to prove were that Mr. Roy and Mr. Settles (1) had each “armed and prepared” himself “to engage in a gun battle” and (2) “did, in fact, engage in a gun battle.” Id. at 507 n.8. The trial court then instructed the jury that it could find each man guilty of murder if “defendant’s conduct ... was a substantial factor” in the bystander’s death, and it was “reasonably foreseeable” that a bystander could be killed or suffer serious bodily injury. Id. at 506-07 n.8. The trial court declined to instruct the jury, as requested by Mr. Roy and Mr. Settles, that the government had to prove that the two men had an “agreement to engage in mutual combat involving firearms.” Id. at 506.
On appeal, Mr. Roy and Mr. Settles both argued that the court’s jury instructions regarding causation improperly allowed each man to be found guilty of murder in the absence of evidence that either man directly caused the bystander’s death or that they were confederates. This court correctly disclaimed complicity as a basis for Mr. Roy’s and Mr. Settles’ culpability for murder,[8] but it then incorrectly held *1187 that complicity was unnecessary so long as the two men “prepared for and undertook to participate in [a] gun battle where it was clearly foreseeable that others would be endangered” and had “contribute[d] substantially to or [were] a substantial factor in [the] fatal injury.” Id. at 507-09. In reaching this determination, this court asserted that it was simply applying principles of “proximate cause.” Id. at 507.
The court in Roy misunderstood causation doctrine. Causation “consists] of.,two constituent parts: actual cause and legal [proximate] cause.” Burrage v. United States, — U.S. —, 134 S.Ct. 881, 887, 187 L.Ed.2d 715 (2014). Actual causality “requires proof that the harm would not have occurred in the absence of — that is, but for — the defendant’s conduct.” Id. at 887-88; see also McKinnon v. United States, 550 A.2d 915, 917 (D.C. 1988) (“In every criminal case, the government has the burden of showing that the defendant’s conduct ... was a cause in fact of the harm for which he ... is charged .... ”). “Thus if A shoots at B intending to kill'but misses, but at that moment B drops dead of some cause wholly unconnected with the shooting, A is not liable for the murder of B, in spite of the simultaneous existence of the two required ingredients, A’s intentional conduct and' the fatal result.” Wayne R. LaFave, Substantive Criminal Law § 6.4 (2d ed.). As Professor LaFave explains, “[w]hat is missing is the necessary causal connection between the conduct and the result of conduct; and causal connection requires something > more than mere coincidence as to time and place.” Id. (footnote omitted).
Only if actual or but-for cause is established do we ask whether the defendant’s actions aré the legal or proximate cause of the harm. The core inquiry is whether there is some reason — e.g., an intervening event or attenuation — that precludes holding defendant criminally culpable for the ultimate injury. See Butts v. United States, 822 A.2d 407, 418 (D.C. 2003) (limiting liability on the basis of proximate cause when an “intervening cause ... was so unforeseeable that the actor’s negligent conduct, though still a substantial causative factor, should not result in the actor’s liability”); Paroline v. United States, — U.S. —, 134 S.Ct. 1710, 1720, 188 L.Ed.2d 714 (2014) (“[P]roximate cause is more restrictive than a requirement of factual cause alone.”). In other words, we consider proximate cause after actual, but-for cause has been established, and it acts to limit causation, not to extend it.
The causation analysis in Roy is flawed both as to actual cause, which it failed to consider, and as to proximate cause, which it defined incorrectly.
The court in Roy ignored the actual or but-for cause requirement in our second-degree murder statute, which obligates the government to prove that the defendant “with malice aforethought ... kill[ed] another”[9] person. D.C. Code § 22-2103 *1188 (2013 Repl.) (emphasis added). Obviously someone had fired the shot that killed the bystander, but the government’s investigation failed to establish whether that person was Mr. Roy. or Mr. Settles.[10] To the extent that the court connected the bystander’s death to Mr. Roy’s or Mr. Settles’s acts of “preparing] for and undert[a]k[ing] to participate in [a] gun battle” (i.e., his acts of possessing and firing a weapon), this evidence did not establish actual causation: simple possession of a gun does not cause any injury, let alone a fatal one, and even firing that gun cannot be said to cause a gunshot death if the fired bullet missed any possible target.[11]
Disregarding this fundamental failure of proof, Roy jumped to proximate cause analysis, noting that this court has “long recognized proximate causation as a valid theory of second-degree murder liability.” Roy, 871 A.2d at 508 n.11.[12] It is correct that the District has long held that if a defendant actually causes an injury that ultimately leads to death, the defendant may be convicted for murder. Accord, Hopkins v. United States, 4 App.D.C. 430, 439 (D.C. Cir. 1894) (reaffirming the centuries-old rule “that if one give wounds to another, who neglects the cure of them, or is disorderly and doth not keep that rule which a person wounded should do, yet if he die it is murder or manslaughter, according as the case is; because if the wound had not been, the man had not died, and, therefore, neglect or disorder in the person who received the wounds shall not excuse the person who gave them”). But “proximate” cause does not relieve the government of proving that the defendant in fact acted in a way that caused an initial injury.[13]
As noted above, proximate cause is a limiting concept. See Paroline, 134 S.Ct. at 1720. Had this limiting concept been properly applied in Roy, it would have preclud *1189 ed the jury from finding Mr. Roy criminally culpable for murder due to a shot fired by Mr. Settles, or vice versa — not enabled it. The criminal law does not accept an understanding of causation in which one person, A,, “causes” another, B, to voluntarily shoot and kill a third party. Instead, absent some connective theory of complicity between A and B (which Roy disclaimed, see supra note 8 and accompanying text), B is the only one responsible for his voluntary actions and their fatal consequences.[14] See H.L.A. Hart & A.M. Hon-oré, Causation in the Law 326 (2d ed. 1985) (“The free, deliberate, and informed intervention of a second person, who intends to exploit the situation created by the first, but is not acting in concert with him, is normally held to relieve the first actor of criminal' responsibility.”); Kadish, supra, at 391 (Under the common law, volitional, criminal actions “are seen not'as caused happenings, but as the product of the actor’s self-determined choices, so that it is the actor who is the cause of what he does, not [the individual] who set the stage for his action.”). Put another way, even assuming arming oneself with a gun and firing it could satisfy the direct causation requirement, the volitional, felonious act of someone else then shooting and killing the decedent is an “intervening cause” that breaks this chain of criminal causation.[15]
Implicit in Roy’s' theory of proximate causation for urban gun battles, however, is an assumption that another person’s act of firing a fatal shot can be a “foreseeable” event that does not break the causal chain between the defendant’s actions — possessing and firing a gun — and a resulting death. 871 A.2d at 507-09. Though foreseeability is certainly part of proximate cause analysis, see McKinnon, 550 A.2d at 917-18, the voluntary choices of other individuals (again, absent some connective theory of complicity) are not the type of “foresee: able” consequences that fall within the boundaries of criminal proximate cause. Foreseeability relates to consequences in the physical, natural world, e.g., lighting a match next to a flammable substance;[16] but, because humans are individual, volitional actors, in criminal law, we do not conceive of their responses to the actions *1190 of others as “foreseeable” and thus serving as the basis for criminal culpability.[17] “[W]hatever the relation of one person’s acts to those of another, it cannot be described in terms of that sense of cause and effect appropriate to the occurrence of natural events without doing violence to our conception of a human action as freely chosen.”[18] Kadish, supra, at 335.
This conception of causation and the bar on holding an individual criminally liable for the volitional actions of others with whom the individual is not complicit is long-standing. Indeed, the Supreme Court of Massachusetts addressed this precise question in Commonwealth v. Campbell, 89 Mass. 541, 543 1863. In Campbell, the government asked the court to instruct the jury that if it the defendant participated in “a riotous assembly,” he could be found guilty of manslaughter “although the evidence may fail to show whether the shot which killed the deceased was fired by the rioters with whom the [defendant] was acting in concert, or by the soldiers who ... resisted] the attack made ... by the rioters _” Id. at 543. Considering “whether the doctrine in question ha[d] any just foundation in the recognized principles of law by which criminal responsibility for the acts of others is regulated and governed,” the Supreme Court of Massachusetts determined it did not. Id. In statements almost tailor-made to rebut Roy’s urban gun battle theory, the court explained:
No person can be held guilty of homicide unless the act is either actually or constructively his, and it cannot be his act in either sense unless committed by his own hand or by some one [sic] acting in concert with him or in furtherance of a common object or purpose.
Id. at 544. The court then continued:
Certainly that cannot be said to be an act of a party in any just sense, or on any sound legal principle, which is not only not done by him, ... but is committed by a person who is his direct and immediate adversary, and who is, at the moment when the alleged criminal act is done, actually engaged in opposing and resisting him and his confederates and abettors in the accomplishment of the unlawful object for which they are united.
Campbell, 89 Mass, at 544-45. Based on these longstanding principles of causation, Roy was wrongly decided.
II. The Causation Problem in Fleming
As noted above, Roy’s urban gun battle theory is predicated on an assumption that one" person can “cause” another to shoot and kill a third party. The majority opinion does not press this faulty conception of causation. Instead, it shifts focus to hold *1191 that an individual who exchanges gunfire with another “proximately causes” any death that results because both individuals are “collectively responsible for creating a zone of great danger — including a substantial likelihood that errant bullets will hit unintended targets.” Ante, at 1180. Repackaging the culpable criminal conduct supporting a murder conviction as the act of creating a “zone of danger,” however, does not solve the causation problems inherent in Roy’s urban gun battle theory.
Until now, in the criminal law context, a “zone of danger” has been a mens rea— not a causation — concept[19]: if a defendant, with specific intent, shoots and kills or injures his target as well as an unintended bystander, his malicious.intent to kill anyone within the zone of danger he created by firing “a hail of bullets” is inferred. Ruffin v. United States, 642 A.2d 1288, 1298 (D.C. 1994) (adopting a criminal law mens rea theory of concurrent intent denied by Ford v. State, 380 Md. 682, 625 A.2d 984 (1993), and later adopted by Henry v. State, 419 Md. 588, 19 A.3d 944 (2011)); see also, e.g., Washington v. United States, 111 A.3d 16 (D.C. 2015); Mobley v. United States, 101 A.3d 406 (D.C. 2014); Castillo-Campos v. United States, 987 A.2d 476 (D.C: 2010); Brown v. United States, 934 A.2d 930 (D.C. 2007); Walls v. United States, 773 A.2d 424 (D.C. 2001). A defendant’s inferred concurrent intent to shoot and kill or injure everyone in a particular “zone of danger,” however, does not address the causation gap that exists where there is no proof that the defendant hit anyone or acted in complicity with someone who did.[20]
But the more fundamental problem with reframing Roy’s causation theory to require that the government prove nothing more than that the defendant, contemporaneously with others, created a “zone of danger” is that this reframing actually changes the substantive nature of the crime. Under D.C. Code § 22-2103, a person is guilty of second-degree murder when he “kills another,” id. (emphasis added); see also supra note 9, with the requisite state of mind, not when he creates a zone of danger in which another person somehow gets killed. The actions of an individual who.creates a “zone of danger” do not themselves kill or lead to the death of anyone: death comes from the action of the shooter who fires the fatal shot. This court cannot “appl[y] principles of proximate causation,” ante, at 1180, to bridge *1192 this causation gap, for reasons already discussed. And we are not empowered to effectively rewrite the murder statute and to dispense altogether with the direct causal connection between a defendant’s actions and a death. See Santos v. District of Columbia, 940 A.2d 113, 116 (D.C. 2007) (“In general, the ‘definition of the elements of a criminal offense is entrusted to the legislature,’ ”); of. United States v. Heinlein, 490 F.2d 726, 736 (D.C. Cir. 1973) (refusing-to extend the felony-murder statute “beyond its common law origins” and holding that “[Qurther action by Congress would be necessary to that end”).[21]
[[Image here]]
Courts may feel “pressure” to somehow find criminal liability in cases “where the culpable consequence of [the] defendant’s action is some unintended but voluntary action of another,” but Professor Kadish warns that “[t]here is no way to extend liability in these ■ eases ... in a way that does not require a significant departure from doctrinal premises.” Kadish, supra, at 399^400, 402-03. This court’s urban gun 'battle theory is a case in point. With no real causation requirement (and no complicity requirement), this theory is unm-oored from established common law principles of criminal culpability.[22]
In effect, the court in Roy made a policy choice to create a new crime that allows an individual to be convicted of murder without proof that he caused (or was complicit in) a murder. If the objective was to ensure that certain homicides beget at least one murder conviction, it is antithetical to another “cardinal principle of Anglo-American jurisprudence that, in Blackstone’s immortal words, better ten guilty persons should go free than one innocent person be convicted.” United States v. Greer, 538 F.2d 437 (D.C. Cir. 1976) (citing 4 William Blackstone, Commentaries on the Laws of England 352 (1769)). Indeed, the creation of this new crime leads to a perverse result: in contrast to cases where the government shoulders its burden to prove the identity of the killer, in urban gun battle cases, the government can successfully prosecute more people for murder based on far less proof.[23] But the biggest problem with this court’s decision in Roy is that we exceeded our judicial role. It is not our job to create new crimes. We do violence to the law when we purport to apply the common law doctrine but in fact act as a legislature. Before more dam *1193 age is done,[24] we need a course correction. Roy should be overturned by this court en banc, not revised and effectively extended by the panel in this case.

. The record indicates that three people were seen with guns that evening: the decedent, Michael Jones; his friend, James Hamlin; and Mr, Fleming’s codefendant, Joseph Peoples. Forensic analysis of all the gun casings and bullets showed that three distinct weapons were used in the exchange of gunfire (a .40 caliber Glock-type firearm belonging to Mr. Hamlin; a “Hi Point” pistol belonging to the decedent; and another .40 caliber Glock-type firearm fired from the sidewalk, though it may have been fired from the balcony).

. Mr. Peoples was also charged with second-degree murder but was found not guilty. Mr. Hamlin was only charged with and convicted of weapons offenses.

. See M.A.P. v. Ryan, 285 A.2d 310, 312 (D.C. 1971). Roy may have been in conflict with other decisions of this court at the time it was decided. See infra. But given subsequent decisions applying the urban gun battle theory, see infra note 24, I am unsure a division of this court could overturn Roy.

. Our conception in criminal law of the individual as a rational actor, in control of his own decisions, is apparent in our law of defenses. See, e.g., Barrett v. United States, 377 A.2d 62, 63-64 (D.C. 1977) (holding that “temporary insanity created by voluntary use of intoxicants will not relieve a defendant of criminal responsibility").

. Cf. Prezzi v. United States, 62 A.2d 196, 198 (D.C. 1948) (holding that a defendant charged with negligent homicide "is not responsible for what the other [participants in the accident] did or for the negligence of the other [participants],” and that a jury may not find a defendant guilty if "the accident was caused by the negligence of [other participants]”).

. See, e.g., Wilson-Bey v. United States, 903 A.2d 818, 841 (D.C. 2006) (en banc) (describ *1186 ing “doctrines that permit conviction” on the basis of complicity, i.e., Pinkerton conspiracy liability and aiding and abetting liability).

. Sanford Kadish has been described as "America’s foremost scholar of the criminal law." Michael S. Moore, Retirement of Sanford Kadish, 79 Cal. L. Rev. 1401 (1991).

. The court in Roy employed terminology that misleadingly suggests organized affiliations and allegiances that might support theories of complicity, e.g., "combatants,” "battles,” "pocket wars,” and “shoot out[s]” at "High Noon,” 871 A.2d at 507-08, but in fact the court rejected a requirement that the participants "reach a meeting of the minds to do battle,” id. at 508. To establish complicity, the government would have had to have shown that these adversaries either conspired with each other, necessitating an agreement to engage in criminal activity, Wilson-Bey, 903 A.2d at 840-41, or that one man aided and abetted the other "in the commission of the specific crime ... charged," id. at 831 (emphasis in original) (quoting Roy (Nakia) v. United States, 652 A.2d 1098, 1104 (D.C. 1995)). But the government could not show that Mr. Roy and Mr. Settles, as adversaries, had any sort of agreement; nor cotild it show that either man wanted the other to succeed in the charged crime — murder—where he himself was the target. See, e.g., Rivers v. Commonwealth, 21 Va.App. 416, 464 S.E.2d 549, 551-52 (1995) (holding that “no existing common law theory,” including accomplice liability, supported a conviction for a bystander's death in a gun battle because the appellant and the shooter "were not co-felons who acted in concert; instead they acted in opposition to each other and did not share the same criminal goal”).

. The clear meaning of this language was recognized by this court long before Roy. Examining identical language in the first degree murder statute, D.C. Code § 22-2101, this court explained that it requires the government to prove that the defendant "inflicted injury on the decedent from which he died,” Waller v. United States, 389 A.2d 801, 807 (D.C. 1978); id. at 807-08 (noting that "[t]he type of conduct subject to its sanctions is clearly identified in words of common understanding, with little room for misinterpretation or conjecture”); see also Christian v. United States, 394 A.2d 1, 48 (D.C. 1978) ("By its terms ... the first-degree murder statute imposes .., liability solely on the person who does the killing. Other participants in the felony are exposed to ,. liability only by virtue of the aiding and abetting statute,”); Ruffin v. United States, 76 A.3d 845, 854 (D.C. 2013) (acknowledging the “presumption that identical words used in different parts of the same act are intended to have the same meaning”).

. Mr. Settles fired first and fired three shots; Mr. Roy then fired back. Roy, 871 A.2d at 502-03.

. To slightly modify Professor LaFave’s hypothetical, if A shoots at B intending to kill but misses, B shoots back and misses, and C is killed by one of their bullets, unless the government can show that A fired the fatal shot, A cannot be found criminally responsible for C’s murder, “in spite of the simultaneous existence of the two required ingredients[:] A’s intentional conduct and the fatal result.” See LaFave, supra, at § 6.4.

. Roy cited, inter alia, to Comber v. United States, 584 A.2d 26, 38-39 (D.C. 1990) (en banc), for this proposition. But this passage in Comber contains no discussion of this principle, much less support for the court’s "proximate cause” analysis; instead, the passage cited by the court in Roy is a discussion of the meaning of the "malice aforethought” mens rea requirement for second-degree murder. To the extent Comber discusses principles of proximate causation at all, it does so in the context of limiting liability for misdemeanor manslaughter, “mindful of the danger” of using misdemeanor manslaughter to “cast too wide a net” of homicide liability. Id. at 50.

.Thus, in each of the proximate cause cases cited by the court in Roy, the defendant had actually caused some injury to the decedent, and the issue was whether an intervening event broke the causal chain such that the defendant could not be convicted of manslaughter or murder. See Butts, 822 A.2d at 417-18 (holding that possible negligence by the victim of a vehicular homicide when crossing the street was not an intervening event that negated drunk driver's criminal liability); McKinnon, 550 A.2d at 917-18 (holding that, where the defendant slashed the decedent's throat, requiring immediate surgery, an infection was a reasonably foreseeable consequence and not an intervening cause of death); Baylor v. United States, 407 A.2d 664, 669-70 (D.C. 1979) (upholding trial court’s refusal to instruct the jury on intervening negligence where defendant’s action— stabbing his wife with great force — substantially contributed to her death, even where subsequent surgery necessitated by defendant’s actions may also have injured her).

. There are limited exceptions where courts trace causation through B to A and only hold only A criminally culpable: if A uses B as an innocent instrumentality, Kadish, supra, at 370, or if B's conduct is legally justified, id. at 395. But neither of these scenarios is contem- . plated by the urban gun battle narrative.

. But it is not even clear that the government must prove this temporal sequence under an urban gun battle theory, i.e„ that the defendant “engaged” in a gun battle first and then a person died. Rather, Roy suggests that, as long as the government proves that two events occurred — the defendant fired his weapon, and a person was shot and killed— liability for murder is established regardless of the timing. In Roy, the government could not prove who fired the fatal shot, bút the evidence was undisputed that Mr. Settles was the first to fire his gun and that he fired three shots before Mr. Roy ever fired back. 871 A.2d at 502-03. It was thus possible that Mr. Settles immediately shot and killed the bystander before Mr. Roy ever “engaged” in the gun battle. By implication, Mr. Roy’s engagement was sufficient to make his actions a "substantial factor” in the bystander’s death, even if it was subsequent to that event. Id, at 507 n.8.

.See, e.g., Williams v. United States, 57 App. D.C. 253, 20 F.2d 269, 270 (D.C. Cir. 1927) (rejecting the argument that decedent's death was not caused by or foreseeable to the defendant where she struck the decedent with a lighted lamp, "resulting in the igniting of [his] clothes ... and thereby causing his death”); see also Kadish, supra, at 332 (“If I light a match in an area containing explosive vapors that ignite, starting a fire that bums down a building, I may be blamed for the burning of the building because I can be said to have caused it. 1 started a chain of events that led to the burning of the building through cause and effect relationships governed by laws of nature.” (emphasis added)).

. As Professor Kadish explains, if someone else lit the match, the criminal law would affix blame to the defendant only if there was complicity:
I may have persuaded another responsible person to light the match or helped him by giving him a match for the purpose. The other person then caused the burning of the building, But whether I am to be blamed for the other person's action would not be assessed by asking whether I caused his action in the same sense that his lighting the match caused the fire. Rather, my responsibility would be determined by asking whether my persuasion or help made me accountable for the other person's actions and what they caused.
Kadish, supra, at 332-33 (emphasis added), In short, ''[t]he doctrine of causation deals with fixing blame for natural events. The doctrine of complicity deals with fixing blame for the criminal action of another person.” Id. at 333.

. See also H.L.A. Hart & A.M. Honoré, Causation in the Law 41 (1st ed. 1959) ("A deliberate human act is therefore most often a barrier ... in tracing back causes in such inquiries: it is something through which we do not trace the cause of a later event and something to which we do trace the cause through intervening causes of other kinds.”).

. The concept of a "zone of danger” is separately employed in tort cases to determine whether a plaintiff has a viable claim of negligent infliction of emotional distress. See, e.g., Jane W. v. President & Dirs. of Georgetown Coll., 863 A.2d 821, 826-28 (D.C. 2004) ("To establish a prima facie case of negligent infliction of emotional distress, (plaintiff] must show that she was in the zone of physical danger created by [the negligent actor’s] conduct”). But that tort law term of art has no application in a murder prosecution.

. That said, the urban gun battle theory also impedes meaningful examination of a defendant’s intent. To be guilty of murder a defendant must act with malice. Comber, 584 A.2d at 38-40 (describing the four types of murder encompassed by malice, including wanton and willful disregard of an unreasonable human risk). But under the urban gun battle theory, the fact finder is never asked to examine whether the defendant acted with malice before the fatal shot is fired. Again, the defendant need not fire the fatal shot, and the malice requirement applies only generally to the defendant's "engagement” in the urban gun battle, without regard to when the defendant fired a gun. See supra note 15. This is in sharp contrast to the theory of concurrent intent, which examines a defendant’s intent at the time when he fired a gun and killed multiple individuals (or when his co-conspirators or accomplices did so). Moreover, casting the blanket of an "urban gun battle” over a shooting incident virtually guarantees that the fact finder will conclude the defendant’s actions were dangerously reckless, obscuring examination of the individual motivations of each actor as events unfold in real time.

. The Council could create a new "zone of danger” murder crime. Accord, Rivers, 464 S.E.2d at 554 (rejecting an urban gun battle type theory of guilt as inconsistent with the common law and concluding that "the legislature, not this Court, is the appropriate forum in which to amend [the law] to provide for criminal liability [for opponents in a gun battle]”). But it is unclear why the Council would feel pressed to do so. We already have serious felonies that prohibit actions that cause danger in the community, e.g., assault with intent to kill, D.C. Code § 22-401 (2013 Repl.) (punishable by up to fifteen years imprisonment), ■■ and assault with intent to kill while armed, • D.C. Code § 22-4502 (2013 Repl.) (punishable by up to thirty years imprisonment).

. We should not be reassured that a few other courts have similarly misapplied causation principles to recognize an “urban gun battle” theory of guilt for murder. See Roy, 871 A.2d at 507 n.10. We may look to other jurisdictions to see how they have analyzed and applied common law doctrines, but we have an obligation to scrutinize other courts’ analyses and refuse to follow suit where their analyses are flawed.

. Roy’s problematic "proximate cause.” theory of causation has been applied in a handful of cases, though never challenged on these grounds. See, e.g., Bryant v. United States, 148 A.3d 689, 2016 WL 6543533 (D.C. 2016); McCray v. United States, 133 A.3d 205 (D.C. 2016); Blaize v. United States, 21 A.3d 78 (D.C. 2011); Blaine v. United States, 18 A.3d 766 (D.C. 2011). Notably, the division’s decision in this case is at least in tension with this court's recent decision in Bryant', this division now holds that the urban gun battle theory of liability can apply to the shooting death of non-bystanders, because "it makes no meaningful difference whether the reasonably foreseeable victim of a shootout was a participant in the battle or a bystander.” Ante, at 1180. But in Bryant the court determined that the urban gun battle theory could be used in first-degree murder cases because it is the "increased risk tó innocent bystanders which justifies the application of proximate cause liability to those participants who willfully choose to engage in these battles.” Bryant v. United States, 148 A.3d at 700 (D.C. 2016). Such conflicting statements about the boundaries of the urban gun battle theory of liability áre inevitable when the court is applying a judicially-legislated, ad hoc theory of culpability that has no foundation in common law doctrine.

.Cf. Wilson-Bey, 903 A.2d at 838 (holding that aiders and abettors may only be held accountable for crimes committed by a principal when the aider and abettor has the same mens rea as the principal, because "it is particularly inappropriate to permit the conviction of an aider and abettor upon a lesser [evidentiary] showing ... than is required visa-vis a principal when the defendants are being prosecuted for a homicide”).