COURT OF APPEALS OF VIRGINIA

Present: Judges Benton, Elder and Annunziata
Argued at Richmond, Virginia


JONATHON LEE RIVERS, S/K/A
 JONATHAN RIVERS
                                            OPINION BY
v.         Record No. 0786-94-2          JUDGE LARRY G. ELDER
                                          DECEMBER 19, 1995
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                   James B. Wilkinson, Judge

          Felipita Athanas for appellant.

          Eugene Murphy, Assistant Attorney General
          (James S. Gilmore, III, Attorney General, on
          brief), for appellee.


     Jonathon Lee Rivers (appellant) appeals his convictions for

(1) attempted murder in violation of Code §§ 18.2-32 and 18.2-26,

and (2) second degree murder in violation of Code § 18.2-32.

Appellant contends the evidence was insufficient to support the

convictions.  We hold the evidence was sufficient to support the

conviction for the attempted murder of Anthony Fraierson and

therefore affirm that conviction; we hold the evidence was

insufficient to support the conviction for the second degree

murder of Felicia Williams and therefore reverse that conviction.

                              I.

                            FACTS

     On August 31, 1993, appellant and Anthony Fraierson were

involved in an argument and a fistfight in front of Fraierson's

house on Edwards Avenue in Richmond.  During the fight, Anthony

Fraierson's brother struck appellant on the back of the head,

which resulted in a bloody wound.  After the fight, appellant immediately returned to his house, which was located on the same city block, and obtained a .45 caliber handgun.  After leaving his house, appellant saw the Fraiersons outside of their house and approached Anthony Fraierson with his gun.  Fraierson also had a gun.  The distance between the parties was 256 feet.  One eyewitness testified that appellant was the first to fire shots at Anthony Fraierson, while appellant and others testified that he returned gunfire only after he was first fired upon.  Felicia Williams, a bystander who lived in a house between Fraierson and appellant, sustained a fatal gunshot wound in the head caused by a bullet from Anthony Fraierson's gun.

In a bench trial on March 15, 1994, appellant was convicted of the second degree murder of Felicia Williams, the attempted murder of Anthony Fraierson, and two firearms charges.[1]

## II.

### EVIDENCE TO SUPPORT ATTEMPTED MURDER CONVICTION

Because there was sufficient evidence to support it, we affirm appellant's attempted murder conviction.  We are guided by familiar standards of review:

> On appeal, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.  The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict and will

[1]  In a separate trial, Anthony Fraierson was convicted of manslaughter in the death of Felicia Williams, the innocent bystander.

2

not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it.

Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)(citations omitted).

"Intent is the purpose formed in a person's mind which may, and often must, be inferred from the facts and circumstances in a particular case." Sandoval v. Commonwealth, 20 Va. App. 133, 137, 455 S.E.2d 730, 732 (1995). "The state of mind of an accused may be shown by his acts and conduct." Id. "The fact finder may infer that a person intends the immediate, direct, and necessary consequences of his voluntary acts." Bell v. Commonwealth, 11 Va. App. 530, 533, 399 S.E.2d 450, 452 (1991).

Viewed in the light most favorable to the Commonwealth, the record shows appellant was injured in a fight with Fraierson and Fraierson's cohorts; appellant returned home after the fight and secured a high caliber gun; appellant fired bullets from the gun at Fraierson several times; and appellant fired first. Despite appellant's contentions, the Commonwealth was not required to prove that appellant directly threatened Fraierson. Based on the evidence before us, we cannot say that it was error for the trial court to have concluded beyond a reasonable doubt appellant attempted to murder Fraierson.

### III.

### EVIDENCE TO SUPPORT MURDER CONVICTION

Second, we hold appellant was not guilty of second degree

murder, as no existing common law theory supports his conviction.

Appellant correctly asserts that our analysis is <u>not</u> governed by the theories of concert of action, transferred intent, or felony-murder. The concert of action theory states that where two or more people act in concert in the commission of a felony, "and one felon shoots a person, that felon's intent is transferred and shared with the other felon as a principal in the second degree." <u>Berkeley v. Commonwealth</u>, 19 Va. App. 279, 293, 451 S.E.2d 41, 48 (1994)(citing <u>Riddick v. Commonwealth</u>, 226 Va. 244, 248, 308 S.E.2d 117, 119 (1983)). In this case, appellant and Fraierson were not co-felons who acted in concert; instead they acted in opposition to each other and did not share the same criminal goal.

Similarly, the transferred intent theory is inapplicable here. This theory states that "if an accused shoots at another intending to kill him, and a third person is killed because of the act, that same intent follows the bullet and is transferred to the killing of the third person, even if such death is accidental or unintentional." <u>Riddick</u>, 226 Va. at 248, 308 S.E.2d at 119. In this case, the innocent bystander was not killed by a bullet from appellant's gun.

Finally, the Commonwealth concedes that based on the Supreme Court's holding in <u>Wooden v. Commonwealth</u>, 222 Va. 758, 762, 284 S.E.2d 811, 814 (1981), the felony-murder doctrine is inapplicable in this case. In <u>Wooden</u>, the defendant participated in the armed robbery of an apartment. Before the robbery, the

5

defendant and her co-felons waited in the apartment for their victim's arrival. When the victim arrived, the victim shot and killed one of the defendant's co-felons, and the defendant was convicted of her co-felon's murder. The Supreme Court held under common law principles that a felon may <u>not</u> be convicted of the murder of a co-felon killed by the victim of the initial felony, there being no evidence of malice[2] imputable to the defendant when a co-felon is killed by the victim. Furthermore, the Court adopted the agency theory of felony murder, which provides that liability lies only where the act of killing is either actually or constructively committed by a felon or by someone acting in concert with him or in furtherance of a common design or purpose. <u>Id.</u> at 763-65, 284 S.E.2d at 814-16.

In <u>Wooden</u>, the Supreme Court traced a line of Pennsylvania cases implicating the felony-murder and vicarious liability

---

[2] <u>Malice</u> is the element distinguishing murder from manslaughter, <u>Moxley v. Commonwealth</u>, 195 Va. 151, 157, 77 S.E.2d 389, 393 (1953), and is the element which the Commonwealth was required to prove beyond a reasonable doubt. Whether an accused acted with malice is generally a question to be decided by the fact finder. <u>Pugh v. Commonwealth</u>, 223 Va. 663, 667, 292 S.E.2d 339, 341 (1982). Malice may be either express or implied by conduct. <u>Coleman v. Commonwealth</u>, 184 Va. 197, 201, 35 S.E.2d 96, 97 (1945). "Generally, implied malice is equivalent to 'constructive malice;' that is, 'malice as such does not exist but the law regards the circumstances of the act as so harmful that the law punishes the act as though malice did in fact exist.'" <u>Pugh</u>, 223 Va. at 668, 292 S.E.2d at 341 (quoting 1 <u>Wharton's Criminal Law and Procedure</u> § 245, at 529 (1957)). Implied malice requires a showing that the wrongful act was done "wilfully or purposefully," <u>Essex v. Commonwealth</u>, 228 Va. 273, 280, 322 S.E.2d 216, 220 (1984), and that this wilful or purposeful act was volitional. <u>Id.</u>

doctrines.  The Court cited with approval Commonwealth v. Redline, 391 Pa. 486, 137 A.2d 472 (1958), and Commonwealth ex rel. Smith v. Myers, 438 Pa. 218, 261 A.2d 550 (1970), which overruled Commonwealth v. Almeida, 362 Pa. 596, 68 A.2d 595 (1949), cert. denied, 340 U.S. 867 (1950).  In Almeida, the Pennsylvania Supreme Court had adopted the proximate cause theory of liability for felony-murder, affirming "the conviction of the defendant for the felony-murder of an innocent third party killed by the return fire of police officers."  Wooden, 222 Va. at 763, 284 S.E.2d at 814.  In Myers, the court stated unequivocally that "'the decision in the Almeida case was a radical departure from common law criminal jurisprudence.'"  Wooden, 222 Va. at 764, 284 S.E.2d at 815 (quoting Myers, 438 Pa. at 224, 261 A.2d at 553).  Adopting Myers' language in Wooden, the Virginia Supreme Court rejected any theory which would hold a defendant answerable for the death of his co-felon on a foreseeability-proximate cause concept of homicide responsibility.  Id; see also King v. Commonwealth, 6 Va. App. 351, 356, 368 S.E.2d 704, 707 (1988)(stating that for the felony-murder doctrine to be used to convict for murder, "'the killing must have been done by the defendant or an accomplice or confederate or by one acting in furtherance of the felonious undertaking'").

We find that Riddick v. Commonwealth, 226 Va. 244, 308 S.E.2d 117 (1983), a case cited by the Commonwealth, does not control this case.  In Riddick, two co-participants initiated a

7

gun battle in which an innocent bystander was shot <u>by a bullet from one of the co-participants' guns</u>. The Supreme Court employed both the transferred intent and concert of action theories in affirming the defendant's second degree murder conviction. The Court held that the transferred intent theory could apply if the <u>defendant</u> fired the fatal shot because his intent to kill the intended victim was transferred to the innocent bystander's death. The Court also held that the concert of action theory could apply if the <u>co-participant</u> fired the fatal shot because the co-participant's intent to kill the intended victim was transferred to the innocent bystander's death, and having acted in concert with the co-participant, the defendant was deemed to share his intent.

The Commonwealth argues, however, the Supreme Court broadened these two concepts when it approved an instruction given by the trial court, which stated:

> If you believe from the evidence that <u>two or more men were shooting guns in mutual combat</u> with the intent to kill and as a result of these shootings the deceased, an innocent bystander, was killed, then each is responsible for the death the same as if he had killed the person he intended to kill, unless he was acting in self defense.

<u>Id.</u> at 249, 308 S.E.2d at 119 (emphasis added). Despite the Commonwealth's contention, we believe the <u>Riddick</u> Court clearly limited its approval of this instruction to the facts of the case and did not intend to broaden the concert of action and transferred intent theories. The Court specifically stated

8

"[w]ithout necessarily giving blanket approval to this instruction for use in every case of this type, we conclude the trial court properly rejected defendant's . . . objection to the instruction, under the facts of this case. Id. at 249, 308 S.E.2d at 120 (emphases added). Furthermore, in Riddick, unlike the instant case, the fatal bullet originated with one of the two co-participants, not a party in opposition to the defendant. Riddick is therefore inapposite.

The Commonwealth asks that we embrace the reasoning inherent in a line of cases originating in California, which has adopted a proximate cause theory to hold defendants guilty of second degree murder under circumstances similar to this case. The California line of cases, however, represents a distinct minority viewpoint. See 40 Am. Jur. 2d Homicide § 39 (1968 & Supp. 1995) ("Responsibility for homicide by one not a participant"). In People v. Gilbert, 408 P.2d 365, 373-74 (1965), rev'd on other grounds, 388 U.S. 263 (1967), the Supreme Court of California held that "[w]hen the defendant . . . with a conscious disregard for life, intentionally commits an act that is likely to cause death, and his victim or a police officer kills in reasonable response to such act, the defendant is guilty of murder." California courts call this doctrine of criminal liability the "provocative act murder" theory. In a provocative act murder:

> neither the defendant nor his accomplices intend to kill the victim. Nor indeed do any of them pull the trigger. Instead it is a third person who actually fires the fatal bullet and it is one of the defendant's

accomplices or occasionally an innocent bystander who ends up as the dead victim. To satisfy the "actus reus" element of this crime the defendant or one of his confederates must commit an act which provokes a third party into firing the fatal shot. To satisfy the "mens rea" element, the defendant or his confederate must know this act has a "high probability" not merely a "foreseeable probability" of eliciting a life-threatening response from the third party.

In re Aurelio R., 212 Cal. Rptr. 868, 870-71 (Cal. Ct. App. 1985); see also Alston v. State, 662 A.2d 247 (Md. 1995) (affirming defendant's second degree murder conviction under analysis similar to that employed by California courts).[3]

Under similar facts, comparable statutes, and case law to that of Virginia, the appellate courts of only two states-- California and Maryland--have upheld murder convictions.[4] Other jurisdictions that have upheld such convictions have done so with the aid of statutes specifically addressing these facts[5] or under

---

[3] Compare Gallimore v. Commonwealth, 246 Va. 441, 436 S.E.2d 421 (1993), where the defendant was convicted of involuntary manslaughter. In Gallimore, the defendant purposefully lied to a friend's husband, telling him that his wife, the defendant's friend, had been kidnapped by a third party. With the defendant present, the husband armed himself, and then located and accidentally killed the third party during a struggle. The Supreme Court affirmed the conviction, holding the defendant's "'conduct was a concurring, proximate cause of [the third party's death]' and that [the defendant] knew or should have known that the circumstances presented a 'dangerous risk of someone being shot or injured when [the husband] left the house to confront [the third party].'" Id. at 448, 436 S.E.2d 426 (citation omitted).

[4] See also People v. Daniels, 431 N.W.2d 846 (Mich. Ct. App. 1988), in which the intermediate appellate court affirmed a voluntary manslaughter conviction using the proximate cause theory.

[5] See, e.g., Blansett v. State, 556 S.W.2d 322 (Tex. Crim.

10

the proximate cause theory of the felony-murder rule--the

minority view--which the Virginia Supreme Court rejected in

Wooden.

We conclude the California and Maryland approaches are not

anchored in any existing theory of common law murder in this

state.  Under Virginia case law, we adhere to a rule of causation

in homicide cases that requires a direct causal connection for

criminal liability to attach.  Furthermore, Virginia statutory

law provides no basis for broadening our common law rule of

causal connection.[6]  We are bound by the proximate cause analysis

App. 1977).

[6]  For example, in Commonwealth v. Gaynor, 648 A.2d 295, 297
(Pa. 1994), the Supreme Court of Pennsylvania used a recently
added statutory provision to affirm the defendant's murder
conviction under facts similar to this case.  The applicable
statute stated:

> (b) Divergence between result designed or
> contemplated and actual result.--
> When intentionally or knowingly causing a
> particular result is an element of an offense, the
> element is not established if the actual result is
> not within the intent or the contemplation of the
> actor unless:
>
> (1)  the actual result differs from that
>      designed or contemplated as the case may
>      be, only in the respect that a different
>      person or different property is injured
>      or affected or that the injury or harm
>      designed or contemplated would have been
>      more serious or more extensive than that
>      caused; or
>
> (2)  the actual result involves the same kind
>      of injury or harm as that designed or
>      contemplated and is not too remote or
>      accidental or on the gravity of his
>      offense.

11

employed by the Supreme Court in <u>Wooden</u> in cases of second degree murder.  As one Court expressly said in rejecting California's unique provocative act murder approach, "[a] rose, the felon[y] murder rule, is still a rose by any other name, vicarious liability."  <u>Sheriff, Clark County v. Hicks</u>, 506 P.2d 766, 768 n.7 (Nev. 1973).  The legislature, not this Court, is the appropriate forum in which to amend the felony-murder concept to provide for criminal liability under the facts of this case.

Accordingly, we affirm appellant's attempted murder conviction and the accompanying firearm conviction.  However, we reverse and remand appellant's second degree murder conviction for further proceedings if the Commonwealth be so advised and reverse and dismiss the accompanying firearm conviction.

<u>Affirmed in part,</u>
<u>reversed and remanded in part and</u>
<u>reversed and dismissed in part.</u>