COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judge Friedman and Senior Judge Clements
Argued at Richmond, Virginia

UNPUBLISHED

KALAH MANGRAM

                                      MEMORANDUM OPINION[*] BY
v.       Record No. 0597-24-2        CHIEF JUDGE MARLA GRAFF DECKER
                                           AUGUST 19, 2025

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Claire G. Cardwell, Judge

Dennis J. McLoughlin, Jr. (McLoughlin Law PLC, on briefs), for
appellant.

Timothy J. Huffstutter, Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Kalah Mangram appeals his convictions of attempted first-degree murder, aggravated

malicious wounding, malicious wounding, maliciously shooting at a vehicle, discharging a

firearm from a vehicle, and two counts of first-degree murder. *See* Code §§ 18.2-26, -32, -51,

-51.2, -154, -286.1. Mangram argues that the trial court erred by not instructing the jury about

the danger of relying on uncorroborated accomplice testimony. He also challenges the

sufficiency of the evidence to support his conviction for aggravated malicious wounding based

on the possibility that the victim of that crime was wounded by crossfire from someone other

than him or a co-defendant. Further, Mangram contends that the Commonwealth failed to

establish his identity as one of the people involved in the shootings because Baker's testimony

was incredible as a matter of law. For the following reasons, we affirm the convictions.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

This case stems from shootings in a parking lot that ended in the deaths of two innocent bystanders and the wounding of two others. Mangram, Javon Pegram, and Zayon Everett were charged with the shootings and a number of related offenses. They were tried together as co-defendants.[2]

Around 7:30 p.m. on November 12, 2021, a car drove by the OMG Convenience Store at the edge of a neighborhood in the City of Richmond known as Creighton Court. The occupants of the car began shooting into the parking lot, striking four individuals. Two of the victims died, one of whom was 9 years old and the other of whom was 14. Jacquawn Coe and Trevel Davis were also struck by bullets but survived. Immediately after the attack at the convenience store, gunfire struck the car of Alexia Brooks as she drove nearby with her two children in the car. After firing a barrage of bullets, the assailants fled.

In the early morning hours following the shootings, around 2:00 a.m. on November 13, 2021, Officer Richard Szymanski of the City of Richmond Police Department stopped a car for driving with its headlights off. Mangram was in the car with Pegram, and Szymanski took their photographs.

Several law enforcement officers from the City of Richmond Police Department investigated the shootings involving the convenience store and Brooks's car. Officer Bryan

---

[1] On review of the sufficiency of the evidence supporting a conviction, the Court views the evidence in the light most favorable to the Commonwealth. *See Hargrove v. Commonwealth*, 77 Va. App. 482, 491 n.1 (2023). However, in reviewing a trial court's ruling on a proposed jury instruction, the evidence is viewed in the light most favorable to the instruction's proponent, in this case Mangram. *Pena Pinedo v. Commonwealth*, 300 Va. 116, 118 (2021). Accordingly, this opinion sets out all of the evidence relevant to the issues before the Court.

[2] Pegram and Everett were also convicted and appealed their convictions. *See Pegram v. Commonwealth*, No. 0207-24-2 (Va. Ct. App. Aug. 19, 2025), and *Everett v. Commonwealth*, No. 1508-24-2 (Va. Ct. App. Aug. 19, 2025), both decided this day.

Marceau found the car used by the assailants abandoned in a parking lot in Mosby Court, a nearby area in the City of Richmond. A bullet hole was found in the roof of the car. Forensic analysis identified DNA from Clintoine Baker in the vehicle. Baker was arrested, and he later identified Mangram, Pegram, and Everett as his accomplices in the shootings. An AR-15-style rifle was recovered from Mangram's brother that was subsequently connected to the shootings through forensic analysis. During the investigation, law enforcement collected cartridge cases, bullets, and bullet fragments from the area, from the bodies of the victims, and from the two cars involved.

At the jury trial, eyewitnesses and surviving victims testified, but they could not identify the shooters. The Commonwealth's primary evidence identifying the three defendants as the offenders came from Baker. He testified that on November 12, 2021, he, Mangram, Pegram, and Everett left their neighborhood, Mosby Court, intending to find and shoot residents of the rival neighborhood of Creighton Court. He explained that their motivation was simply animosity between the neighborhoods and they did not have any particular individuals in mind. According to Baker, Pegram drove the four of them in a stolen car. They circled the OMG Convenience Store until they spied people leaving the store whom they considered suitable targets. Baker testified that although he and his accomplices opened fire, it was possible that someone on "the street" shot at them and may have fired first. Baker identified the firearms the group used as a 9mm Glock, a .357 or .40, an "AR," and an "AK."

Baker described the parking lot in which they left the stolen car after the shootings. He explained that he attempted to quickly clean the car to remove any evidence that would identify him or his accomplices. Baker also explained that they returned to the area where they had started their evening and briefly went into an apartment. According to him, although he kept his gun, Mangram took the other guns to give to "his people." Baker acknowledged that he had

been charged with the same offenses as Mangram, Pegram, and Everett. Detective Ja'Ontay Wilson testified that he knew the co-defendants from Mosby Court and that the co-defendants and Baker often spent time together.

Other Commonwealth's evidence included a compilation of video surveillance recordings depicting the assailants' route before and after the shootings. The video compilation showed the assailants drive away after the offenses, park, and get out of the car. It then showed their walking path to an apartment building and their movements through a stairwell and into an apartment. During Baker's testimony, he identified himself and the three defendants in the videos. In addition, the compilation included surveillance footage of the parking lot of the convenience store. But not all of the shootings were captured on the recordings due to the placement of the cameras.

Firearms expert Megan Korneke testified about the ballistics evidence, concluding that six firearms were involved in the shootings. Ballistics evidence established that five of the guns were used by the four assailants.[3] One of the firearms connected to the stolen car was determined to have fired a bullet recovered from the chest of one of the deceased victims. Ballistics evidence tied a second firearm connected to the car to bullets that struck two other victims, killing one of them. The bullet fragment recovered from Davis, however, was unsuitable for comparison to any of the other ballistics evidence.

After the Commonwealth presented its case-in-chief, Mangram opted not to present any evidence. He asked the trial court to strike the charges. Defense counsel challenged the sufficiency of the evidence supporting a finding of a permanent injury to Coe. Counsel also argued that the Commonwealth failed to prove that he or any of his companions fired the shots that wounded Davis because the evidence permitted a finding that Davis could have been shot by

_____

[3] Of these firearms, Baker identified four.

- 4 -

return crossfire.  Further, defense counsel argued that the evidence was insufficient to establish his identity as a perpetrator because Baker's testimony was inherently incredible as a matter of law.  The court granted the motion to strike in part, reducing the charge of aggravated malicious wounding of Coe to malicious wounding.  It denied the motion as to the other charges.

Before jury deliberations began, defense counsel asked the trial court to instruct the jury on the risks of relying on the uncorroborated testimony of an accomplice.  The Commonwealth's attorney countered that the instruction was inappropriate because Baker's testimony was corroborated.  The court refused the instruction.

After deliberations, the jury returned guilty verdicts on each of the charges: attempted first-degree murder, aggravated malicious wounding, malicious wounding, maliciously shooting at a vehicle, discharging a firearm from a vehicle, and two counts of first-degree murder.  Mangram was sentenced to 135 years in prison, with 80 years suspended.

ANALYSIS

I.  Jury Instruction

Mangram argues that the trial court erred by refusing to instruct the jury on the danger of relying on uncorroborated accomplice testimony.  The Commonwealth counters that, under Rule 5A:18, Mangram waived this argument.

It is well established that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice."  Rule 5A:18.  "The purpose of th[e] contemporaneous objection requirement [in this rule] is to allow the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials."  *Clark v. Commonwealth*, 78 Va. App. 726, 766-67 (2023) (first alteration in original) (quoting *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015)).  The Supreme Court of

Virginia has held "that one party may not rely on the objection of another party to preserve an argument for appeal without expressly joining in the objection." *Linnon v. Commonwealth*, 287 Va. 92, 102 (2014) (affirming a Court of Appeals ruling that the objection of one co-defendant could not be imputed to another even though the circuit court had the opportunity to rule on the argument); *see Mollenhauer v. Commonwealth*, 73 Va. App. 318, 330 (2021) (citing *Linnon*, 287 Va. at 102).

During the trial, counsel for both Everett and Pegram asked the court to instruct the jury on the danger of relying on the uncorroborated testimony of an accomplice. The trial court denied the request, "find[ing] that there was corroborative evidence." Mangram did not expressly join the request for the instruction, object to the ruling, or file a motion to set aside the verdict.

Mangram suggests that this assignment of error was preserved below because the argument "was made on behalf of all three defendants." The record does not support this contention; nor did Mangram "expressly join[]" in the jury instruction request. *See Linnon*, 287 Va. at 102. Therefore he "may not rely on" it.[4] *See id.*

Mangram alternatively asks this Court to consider his argument pursuant to the ends-of-justice exception in Rule 5A:18. Under this exception, an appellant "must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred." *Conley v. Commonwealth*, 74 Va. App. 658, 683 (2022) (quoting *Holt v. Commonwealth*, 66 Va. App. 199, 210 (2016) (en banc)); *see also Commonwealth v. Bass*, 292 Va. 19, 27 (2016) (framing the test

---

[4] Although Mangram attempts to distinguish *Linnon* on the grounds that it pertained to an objection of a co-defendant rather than a request for a jury instruction, we conclude this is a distinction without a legal difference. *See generally Linnon*, 287 Va. at 105 (applying Rule 5:25, the Supreme Court of Virginia's counterpart to Rule 5A:18, to bar an argument in support of the appellant's proposed jury instruction because he did not make that specific argument in support of the instruction at trial).

as requiring consideration of "whether there is error" as the appellant contends and "whether the failure to apply the [exception] would result in a grave injustice" (quoting *Gheorghiu v. Commonwealth*, 280 Va. 678, 689 (2010))). To show a miscarriage of justice, "the appellant must demonstrate that he or she was convicted for conduct that was not a criminal offense or the record must affirmatively prove that an element of the offense did not occur." *Holt*, 66 Va. App. at 210 (quoting *Redman v. Commonwealth*, 25 Va. App. 215, 222 (1997)). Consequently, before applying the ends-of-justice exception the Court must "determine whether the record contains affirmative evidence of innocence or lack of a criminal offense." *Id.* (quoting *Flanagan v. Commonwealth*, 58 Va. App. 681, 695 (2011)).

Mangram does not suggest that the record contains affirmative evidence of his innocence or demonstrate that a criminal offense did not occur. Nor do we find that either of these requirements for the application of the ends-of-justice exception are met. As a result, our consideration of this assignment of error is barred by Rule 5A:18.

## II. Sufficiency of the Evidence

Mangram challenges the sufficiency of the evidence on two grounds. First, he suggests that the evidence was insufficient to support his conviction for the aggravated malicious wounding of Davis because the Commonwealth did not exclude the possibility that Davis was wounded by crossfire during the attack. Second, Mangram argues that Baker's testimony identifying him as one of the offenders was inherently incredible as a matter of law and, without it, the evidence is insufficient.

Our role in reviewing a sufficiency challenge "is a limited one." *See Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). In this Court's review of the sufficiency of the evidence to support a conviction, we will affirm the decision unless it was plainly wrong or the conviction lacked evidence to support it. *See Hargrove v. Commonwealth*, 77 Va. App. 482, 506-07 (2023).

- 7 -

"If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Hogle v. Commonwealth*, 75 Va. App. 743, 753 (2022) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)). In conducting this review, the "appellate court does not 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). Instead, the "relevant question is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)).

An appellate court evaluating the sufficiency of the evidence "does not distinguish between direct and circumstantial evidence, as the fact finder . . . 'is entitled to consider all of the evidence, without distinction, in reaching its determination.'" *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003)). In fact, "[a] conviction may rest on circumstantial evidence alone." *Garrick*, 303 Va. at 183. The jury, acting as the fact finder, was responsible for "weigh[ing] the evidence" and "draw[ing] reasonable inferences from basic facts to ultimate facts." *Raspberry v. Commonwealth*, 71 Va. App. 19, 29 (2019) (quoting *Burrous v. Commonwealth*, 68 Va. App. 275, 279 (2017)). And "[r]easonable inferences drawn by the factfinder 'cannot be upended on appeal unless we deem them so attenuated that they push into the realm of *non sequitur*.'" *Commonwealth v. Wilkerson*, ___ Va. ___, ___ (Feb. 20, 2025) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 332 (2018) (per curiam)).

It is through this well-established legal lens that we view the sufficiency challenges.

A. Possibility of Crossfire

Mangram argues that the evidence was insufficient to support his conviction for the aggravated malicious wounding of Davis because the Commonwealth did not exclude the possibility that Davis was wounded by crossfire.

To obtain a conviction for malicious wounding, in pertinent part, the Commonwealth must prove that the defendant acted with the requisite intent. *See* Code § 18.2-51.2(A). Mangram cites *Rivers v. Commonwealth*, 21 Va. App. 416 (1995), in support of his argument that the Commonwealth failed to prove his intent because it did not establish that he or one of his accomplices actually shot Davis. *See generally Carter v. Commonwealth*, 232 Va. 122, 126 (1986) ("[E]ach co-actor is responsible for the acts of the others . . . ."). But *Rivers* does not control here.

In *Rivers*, 21 Va. App. at 419, the Court reversed a conviction for second-degree murder. During a gunfight between Rivers and his neighbor, the neighbor shot and killed a bystander. *Id.* at 420. The Court emphasized that Rivers did not fire the fatal bullet; instead, it was fired by someone acting in opposition to him. *Id.* at 421-24. Therefore, the Court held that "no existing common law theory," such as concert of action, transferred intent, or felony murder, supported the intent element required to convict Rivers. *Id.* at 421.

Mangram is correct that if Davis was wounded by a bystander or victim who returned fire in opposition to him, the Commonwealth did not present evidence sufficient to support his conviction for aggravated malicious wounding. *See id.* at 419. He hypothesizes that Davis could have been wounded by victim crossfire. Mangram points to the fact that the ballistics evidence did not establish what kind of firearm shot Davis. But these facts are in stark contrast to those in *Rivers* and do not support Mangram's conclusion.

Mangram relies on what he characterizes as a reasonable hypothesis of innocence. The law in this area is well-settled. "[W]hen the evidence is wholly circumstantial[,] . . . all necessary

circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence." *Haas v. Commonwealth*, 299 Va. 465, 468 (2021) (third alteration in original) (quoting *Rogers v. Commonwealth*, 242 Va. 307, 317 (1991)). "The statement that circumstantial evidence must exclude every reasonable theory of innocence is simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt." *Vasquez v. Commonwealth*, 291 Va. 232, 249-50 (2016) (quoting *Hudson*, 265 Va. at 513). "The question" on appellate review "is not whether there was 'some evidence' to support a defendant's hypothesis of innocence, because the totality of the circumstantial evidence may allow a factfinder to reject an asserted hypothesis of innocence as unreasonable." *Wilkerson*, ___ Va. at ___ (quoting *Moseley*, 293 Va. at 464). "[W]hether an alternate hypothesis of innocence is reasonable is a question of fact and, therefore, is binding on [this Court] unless plainly wrong." *Clark*, 78 Va. App. at 752 (alterations in original) (quoting *Maust v. Commonwealth*, 77 Va. App. 687, 700 (2023) (en banc)).

Davis was shot after he left the store. He testified that he could not tell where "the shots c[ame] from" and saw no one shooting during the barrage of gunfire. He ran across the intersection and collapsed. Bullets struck him in his lower stomach, shoulder, and hand. The jury could conclude that each of the three bullets caused a life-threatening or permanent injury.

On cross-examination, Baker testified that during the attack he thought one person "from the street" returned fire. Analysis of the ballistics evidence connected only five of the six guns used to Baker and his accomplices. The gun not tied to Baker or the three co-defendants lodged a bullet fragment in the roof of their car. That gun also dropped cartridges in the parking lot outside the OMG Convenience Store. This evidence supports the supposition that someone in the store parking lot shot at Mangram and his accomplices.

Even so, the record supports the jury's factual finding that Baker or one of the three co-defendants shot Davis as he left the store. The group drove to the Creighton Court neighborhood specifically with the intent to shoot people who lived there. They circled the OMG Convenience Store until they saw people they deemed to be suitable targets. The four assailants released a barrage of bullets, and Davis was shot not once but three times as he fled to safety across the street.[5] On this evidence, it was entirely reasonable for the jury to conclude that one of the four assailants fired at least one of the three bullets that struck Davis. Such a conclusion was simply not plainly wrong nor without evidence to support it. *See Garrick*, 303 Va. at 182 ("An appellate court may neither find facts nor draw inferences that favor the losing party that the factfinder did not.").

Ballistics evidence tending to show that someone standing outside the store returned fire toward the assailants' car as it drove by does not undermine this factual finding as a matter of law. The jury had the evidence before it and rejected the possibility that Davis was wounded *solely* by possible crossfire. It resolved the question of fact of whether Mangram's alternative hypothesis of innocence was reasonable. *See Vasquez*, 291 Va. at 250. Significantly different from the facts in *Rivers*, 21 Va. App. at 420, the evidence here did not affirmatively establish that all three bullets that struck Davis were fired by someone acting in opposition to the co-defendants. It was reasonable for the jury to reject the hypothesis that someone on the street aiming at the assailants' car accidentally shot a bystander *three times*, particularly one who was running away from the scene. *See Vasquez*, 291 Va. at 250 (explaining that the rejection of a hypothesis of innocence is

---

[5] Further, the video recording shows the assailants firing on a group of three individuals, one of whom fled across the street. The jury was entitled to view this evidence as proof of Davis's location at the time of the shootings in relation to the assailants' car, the other bystanders, and the cartridges expelled in the parking lot. *See generally Barney*, 302 Va. at 97 (recognizing the appellate court's duty to defer to "the factfinder's 'interpretation of all of the evidence, including video evidence[,]' presented at trial" (quoting *Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022))).

plainly wrong only when no "rational factfinder could have found that the incriminating evidence render[ed] the hypothesis of innocence unreasonable").

For these reasons, the jury's finding that Mangram or one of his accomplices fired at least one of the three bullets that struck Davis is not plainly wrong or without evidence to support it.

### B. Baker's Credibility

Mangram challenges the credibility of Baker's testimony identifying him as one of the shooters. He emphasizes contradictions in Baker's testimony and argues that he had an incentive to lie. Based on these points, he maintains Baker was an incredible witness as a matter of law. He further concludes that because of this the evidence was insufficient to support his convictions.

"The sole responsibility to determine the credibility of witnesses, the weight to be given to their testimony, and the inferences to be drawn from proven facts lies with the fact finder," in this case the jury. *Blankenship v. Commonwealth*, 71 Va. App. 608, 619 (2020) (quoting *Ragland v. Commonwealth*, 67 Va. App. 519, 529-30 (2017)). A reviewing court "must accept 'the [fact finder]'s determination of the credibility of witness testimony unless, "as a matter of law, the testimony is inherently incredible.""" *Hammer v. Commonwealth*, 74 Va. App. 225, 239 (2022) (quoting *Lambert v. Commonwealth*, 70 Va. App. 740, 759 (2019)).

The inherently incredible standard presents a high hurdle on appeal. "Evidence is not 'incredible' unless it is 'so manifestly false that reasonable men ought not to believe it' or [it is] 'shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Gerald v. Commonwealth*, 295 Va. 469, 487 (2018) (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)). "A legal determination that a witness is inherently incredible is very different from the mere identification of inconsistencies in a witness'[s] testimony or statements." *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019). "Testimony may be contradictory or contain inconsistencies without rising to the level of being inherently incredible as

a matter of law." *Id.* As such, "'[p]otential inconsistencies in testimony are resolved by the fact finder,' not the appellate court." *Id.* (alteration in original) (quoting *Towler v. Commonwealth*, 59 Va. App. 284, 292 (2011)).

Although Baker contradicted himself at times during his testimony, those contradictions do not render his testimony inherently incredible. He was cross-examined extensively about inconsistencies in his testimony as well as about his pending charges related to the shootings. Baker admitted that by cooperating with the prosecution, he was hoping for leniency in his own sentencing. In addition, during closing arguments, defense counsel strenuously contended that Baker's testimony was not credible, putting the matter squarely before the jury.

The jury was instructed that its duties included assessing witness credibility. In the end, it obviously accepted Baker's testimony as credible. This conclusion may not be overturned on appeal because his testimony was not, as a matter of law, "inherently incredible[] or so contrary to human experience as to render it unworthy of belief." *See Johnson v. Commonwealth*, 58 Va. App. 303, 315 (2011) (quoting *Robertson v. Commonwealth*, 12 Va. App. 854, 858 (1991)). And Baker's potential motive for testifying was "appropriately weighed as part of the entire issue of witness credibility, which [wa]s left to the jury to determine." *Juniper*, 271 Va. at 415.

Further, Baker's testimony identifying Mangram as a participant in the offenses was corroborated by the video exhibit. Richmond Police Detective Amira Sleem compiled the videos into the format in which the Commonwealth's exhibit was entered into evidence. The requirement of appellate deference to the factfinder "applies not only to 'matters of witness credibility' but also to the factfinder's 'interpretation of . . . video evidence.'" *Barney*, 302 Va. at 97 (quoting *Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022)).

Mangram points to the inconsistent timestamps in the composite video. He also questions the relevance of the stairwell footage based on the color of the jackets worn by the people in the

video. Baker testified they wore black, and the street footage showed the suspects in black outerwear. In the nighttime video from the stairwell, however, the clothes appear white. The composite video timestamps and color discrepancy were not explained in the record, but they were before the jury to assess. Everett's counsel ascribed the color effect to the use of a "night vision camera."

Regardless, "[t]he factfinder 'views video and other evidence to determine what it believes happened.'" *Barney*, 302 Va. at 97 (quoting *Meade*, 74 Va. App. at 806). The jury was permitted to find the compilation video showed the route of the assailants after the attack. Although the timestamps on the various videos did not flow chronologically, Detective Sleem explained she put them in sequential order. She described the location of each camera and retraced the route herself. The jury watched the video and assessed the timestamps and the images themselves. It had before it the incongruity in the color imaging as well as the similarities between the clothing worn by the assailants and that worn by the individuals in the stairwell. On this record, the jury was entitled to find that the video recording taken in the stairwell captured the images of the assailants despite the incongruity in the color imaging. *See id.* (explaining that an appellate court "view[s] video evidence . . . for the limited purpose of determining whether any rational factfinder could have viewed it as the [factfinder] did" (third alteration in original) (quoting *Meade*, 74 Va. App. at 806)).

Based on well-established legal principles, despite some inconsistencies, Baker's testimony was not inherently incredible. *See Green v. Commonwealth*, 78 Va. App. 670, 688 (2023) (holding that accomplice testimony and corroborating evidence sufficiently supported the convictions). For these reasons, the evidence was sufficient to support the convictions.

CONCLUSION

Under Rule 5A:18, Mangram waived his argument that the trial court erred by declining to caution the jury on the danger of relying solely on uncorroborated accomplice testimony.

Further, the evidence was sufficient to support the jury's finding that Mangram or one of his accomplices fired at least one of the bullets that struck Davis. Finally, Baker's testimony identifying Mangram as a participant in the shootings was not inherently incredible as a matter of law, and therefore, the evidence was sufficient. Consequently, we affirm the convictions.

*Affirmed.*